IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH CHRISTINE GREEN, <br><br> Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 4:22-CV-01731-DAC <br><br> MAGISTRATE JUDGE DARRELL A. CLAY <br><br> **MEMORANDUM OPINION AND ORDER** |

INTRODUCTION

Plaintiff Elizabeth Christine Green challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On September 27, 2022, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a report and recommendation (non-document entry dated Sept. 27, 2022) and on November 29, 2022, the parties consented to my exercising jurisdiction in accordance with 28 U.S.C. § 636(c). (ECF #8). Following review, and for the reasons stated below, I **AFFIRM** the Commissioner's decision.

PROCEDURAL BACKGROUND

Ms. Green filed for DIB on November 5, 2020, alleging a disability onset date of October 5, 2020. (Tr. 179-80). The claim was denied initially and on reconsideration. (Tr. 75-80, 82-87). Ms. Green then requested a hearing before an Administrative Law Judge. (Tr. 88-91). Ms. Green

1

(represented by counsel) and a vocational expert (VE) testified before the ALJ on July 27, 2021. (Tr. 28-73). On August 11, 2020, the ALJ issued a written decision finding Ms. Green not disabled. (Tr. 12-27). The Appeals Council denied her request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6; *see* 20 C.F.R. §§ 404.955 and 404.981). Ms. Green timely filed this action on September 27, 2022. (ECF #1).

FACTUAL BACKGROUND

Ms. Green does not challenge the ALJ's residual functional capacity (RFC) assessment. She challenges only the ALJ's finding that she could perform past relevant work as a nursing instructor and as a medical records administrator. Therefore, I focus my review on the record evidence relevant to her argument.

I.  PERSONAL AND VOCATIONAL EVIDENCE

Ms. Green was 59 years old on the alleged onset date, and 60 years old at the administrative hearing. (Tr. 75). She earned her bachelor's degree after obtaining a nursing diploma. (Tr. 35). From 1991 to 2012, Ms. Green worked as a registered nurse. (Tr. 237). In 2012, Ms. Green began working with hospitals and medical offices to implement the use of electronic health records. (Tr. 239).

II. RELEVANT EVIDENCE

Ms. Green completed a Disability Report, dated November 5, 2020, and identified her prior job titles, including clinical implementation specialist (October 2012 to March 2014), application analyst (October 2015 to June 2019), clinical quality analyst (July 2019 to October 2019), and implementation manager (June 2020 to October 2020). (Tr. 227). She also completed a Work History Report (WHR), dated November 30, 2020, and stated she worked as a registered

2

nurse from 1991 to 2012 and as an implementation specialist beginning in 2012. (Tr. 237). In the WHR, Ms. Green described her nursing position: "[w]orked as a staff nurse in ICU, ED, GI Lab, IR. On feet all day caring for patients," including tasks involving lifting and carrying, such as repositioning, assisting patients with transfers, and wheeling patient beds to other departments. (Tr. 238). In this position, the heaviest weight Ms. Green lifted was 100+ pounds and she frequently lifted 50 or more pounds. (*Id.*). As an implementation specialist, Ms. Green "traveled out of state to different hospitals supporting implementation of [electronic health records]. During support I was on feet entire day assisting users in operating rooms, ICU and ER depts. Provided support standing next to nurses and providers who were standing or sitting." (Tr. 239). She did not endorse any specific lifting or carrying tasks but noted the heaviest weight lifted was 10 pounds. (*Id.*). Ms. Green provided the following summary narrative regarding her work history:

> After leaving the clinical bedside as a registered nurse, I worked with electronic health records (EHR). Since 2012 I have held different titles but work was the same. Working as an analyst since 2012 my work included more than 75% travel to hospitals and ambulatory offices throughout the United States and Alaska. I can no longer do extensive travel or be on my feet.

(Tr. 240). Before the administrative hearing, VE Brett Salkin classified Ms. Green's past relevant work as registered nurse (DOT 075.364-010, skilled SVP 7, medium exertion) and medical records administrator (DOT 079.167-014, skilled SVP 8, light exertion). (Tr. 280).

III. ADMINISTRATIVE HEARING

During the hearing, Ms. Green testified her role as an electronic health records implementation specialist was to travel to hospitals and medical facilities to work with other clinicians and providers to teach them how to document patient information. (Tr. 39). Ms. Green then stated the heaviest weight she lifted in that position was between 100 and 400 pounds,

3

because of some obese patients. (*Id.*). The ALJ expressed confusion at this testimony, noting that in the WHR Ms. Green unequivocally stated she left her position as a registered nurse and began working as an analyst implementing the use of electronic health records in 2012, but her testimony regarding the heaviest weight she lifted on the job suggested she continued performing as a registered nurse. (Tr. 39-40). In response, Ms. Green stated she was required to be an RN to get the position working with electronic health records, so she was "still using [her] skills as a nurse." (Tr. 41). She also testified that her position was a combined role, helping clinicians at other hospitals implement the use of electronic health records *and* providing clinical nursing services to patients. (Tr. 42). When the ALJ pointed out that Ms. Green's testimony was inconsistent with the WHR she completed, Ms. Green testified that her responses in the report only related to the "classroom training" portion of her job and that when she was on the floor training clinicians in electronic health records she also performed patient care, including lifting and moving patients. (Tr. 43-44).

Because Ms. Green's testimony at the hearing differed from her responses in the WHR, the ALJ asked VE Salkin to identify Ms. Green's past relevant work solely based on the WHR and again based on her current testimony. (Tr. 44-45). Considering only the WHR, Mr. Salkin identified Ms. Green's past relevant work as follows:

- Nursing instructor (DOT 075.124-018; light exertion as generally performed, very heavy as actually performed; skilled SVP 8);

- General duty nurse (DOT 075.364-010; medium exertion as generally performed, heavy as actually performed; skilled SVP 7); and

- Medical records administrator (DOT 079.167-014, light exertion as generally and actually performed).

4

(Tr. 60, 62). Considering Ms. Green's current testimony, Mr. Salkin identified the nursing instructor and general duty nurse positions as well as a composite job of general duty nurse/medical records administrator, heavy exertion as actually performed, skilled SVP 8. (Tr. 60-61).

The ALJ asked Mr. Salkin if a hypothetical individual subject to certain restrictions could perform Ms. Green's past relevant work, both as described in the WHR and as described in her testimony. First, the ALJ asked if an individual of Ms. Green's age, education, and experience could perform Ms. Green's past relevant work if limited to light exertion and restricted to occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; occasionally balance and stoop; frequently kneel, crouch, and crawl; avoid exposure to dangerous moving machinery and unprotected heights; and should perform no commercial driving. (Tr. 63). Mr. Salkin testified the individual could perform the nursing instructor position as it is generally performed and could perform the medical records administrator position as a standalone job, but not as a composite general duty nurse/medical records administrator position. (Tr. 63-64).

If additionally restricted to occasionally lifting and carrying 20 pounds, frequently lifting and carrying 10 pounds, and standing and/or walking for 4 hours and sitting for 6 hours in an 8-hour day, the hypothetical individual could perform only the standalone medical records administrator position, as generally and actually performed. (Tr. 64).

If additionally restricted to sedentary work, the hypothetical individual would not be able to perform Ms. Green's past relevant work, either as generally or actually performed. (Tr. 65). Mr. Salkin's opinion as to the three hypotheticals did not change if the individual was also restricted to frequent overhead reaching with the right upper extremity, nor if the individual was required to

5

avoid concentrated exposure to fumes, dusts, odors, gases, and poor ventilation. (*Id.*). However, if limited to just occasional overhead reaching with the right upper extremity, the individual could not perform any past relevant work. (Tr. 66).

Mr. Salkin also testified employers tolerate an employee being off task no more than 10% of the workday and absent no more than once a month. (Tr. 66).

### THE ALJ'S DECISION

The ALJ's decision included the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant has not engaged in substantial gainful activity since October 1, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: Degenerative change of the lumbar spine, status post vertebral compression fractures at L1 through L3, and post-traumatic arthritis of the bilateral ankles/feet, status post open reduction internal fixation of left calcaneus and cuboid fractures, and status post right navicular and cuboid fractures and surgical talonavicular fusion (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with the following limitations: The claimant can never climb ladders, ropes, or scaffolds, she should avoid exposure to dangerous moving machinery and unprotected heights, and she should perform no commercial driving. The claimant can occasionally climb ramps/stairs, balance and stoop, and she can frequently kneel, crouch, and crawl.

6. The claimant is capable of performing past relevant work as a Nursing Instructor and as a Medical Records Administrator/Implementation Specialist. This work does not require the performance of work-related

> activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2020, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-23).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference.

*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Ms. Green takes issue with the ALJ's findings concerning her ability to perform past relevant work. Step 4 of the sequential analysis requires the ALJ to determine whether an applicant is capable of performing her past relevant work. *See* 20 C.F.R. § 404.1520(e). Where substantial evidence supports the ALJ's conclusion that a claimant can perform her past relevant work, the Commissioner's denial of benefits is proper. *See Walters*, 127 F.3d at 529.

9

First, Ms. Green argues the ALJ's determination that she can perform past relevant work as a medical records administrator/implementation specialist is not supported by substantial evidence because the ALJ failed to recognize her past relevant work as a composite job of registered nurse and medical records administrator. (Pl.'s Br., ECF #10, PageID 1180-81). In the written decision, the ALJ stated, "the undersigned does not find the claimant's testimony regarding the RN-related demands of her work as a nursing instructor or medical records administrator/ implementation specialist credible or persuasive." (Tr. 23). According to Ms. Green, it was improper for the ALJ to assess the credibility of her testimony regarding her past work experience because Social Security Ruling SSR 16-3p makes it improper for an ALJ to assess the credibility of a claimant's statement, finding that "subjective symptom evaluation is not an examination of an individual's character." (ECF #10 at PageID 1181).

Ms. Green's reliance on SSR 16-3p is misplaced. That Ruling provides guidance about how a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms are evaluated and focuses the inquiry on whether those statements are consistent with objective medical evidence and other evidence in the record. SSR 16-3p, 2016 WL 1119029. The Ruling eliminated the term "credibility" to emphasize that the evaluation examines the consistency of the claimant's statements, and not the claimant's character for truthfulness. The Ruling does not support Ms. Green's contention that it is improper for the ALJ to assess the inconsistencies among the various statements Ms. Green gave about her work history, as the ALJ did here.

Moreover, it is the ALJ's job to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7; see *Solembrino v. Astrue*, 1:10-CV-01017, 2011 WL 2115872, at *8 (N.D. Ohio May 27, 2011)

10

("It is not uncommon in disability cases for there to be some inconsistencies in the record. It is the duty of the ALJ to resolve any inconsistencies in the evidence."); *see also Peabody Coal Co., v. Hill*, 123 F.3d 412, 415 (6th Cir. 1997) ("In deciding whether the substantial evidence requirement is satisfied, we consider whether the [ALJ] adequately explained the reasons for crediting certain testimony and evidence over other evidence in the record."). Here, the ALJ identified the material inconsistencies in Ms. Green's statements and explained her reasons for crediting certain evidence in the record over Ms. Green's testimony at the hearing:

> Similarly, contemporaneously with leaving her job and filing the application at issue, the claimant specifically described the duties of the job she had just left, and had been performing for several years; as discussed above, the claimant at [*sic*] time indicated unequivocally that she had left the "clinical bedside [duties of] a registered nurse" behind her in 2012, and that since that time, her work in EHR has involved "more than 75 percent travel" with the remainder of her time spent "assisting users" of EHR. At the hearing, the claimant testified that while teaching, she was required to perform the heavy lifting and other patient-care requirements of RN work, and she said that [*sic*] used her experience as an RN" while teaching and assisting others in EHR implementation. The undersigned finds the testimony unpersuasive as it is inconsistent with the claimant's prior, uncounseled, and contemporaneous description of her work, and inconsistent with her letter of termination, which did not suggest that any physical deficits were at the root of the claimant's performance issues, but which did suggest that the claimant's anticipated absence from work from October 2020 to January 2021 was not accompanied by medical documentation supporting the need for this protracted absence, and nothing in her treatment notes suggests such a need.

(Tr. 21-22).

The ALJ appropriately identified material inconsistencies in Ms. Green's statements regarding her work history and adequately explained how she resolved those inconsistencies. Her conclusion that Ms. Green's past relevant work was not a composite of two different jobs is supported by substantial evidence.

11

Ms. Green also argues the ALJ violated POMS DI 25005.020, specifically the provision requiring adjudicators to ensure that information about the claimant's past relevant work is detailed enough to compare the requirements of the work to the RFC on a function-by-function basis. (*Id.* at PageID 1182). She claims the ALJ failed to follow this standard because she "require[ed] the VE to rely on far less detailed information in pre-hearing exhibits rather than full description of past relevant work provided in [Ms. Green's] testimony." Not so. Here, the ALJ recognized Ms. Green's testimony differed considerably from the information she provided in the WHR and asked VE Salkin to opine whether an individual could perform Ms. Green's past relevant work as she described it in the WHR *and* as she described it in her testimony. (*See* Tr. 65). Ms. Green has not identified any error in this regard.

Second, Ms. Green claims the ALJ "inappropriately found [her] past relevant work included being a Nursing Instructor" because she did not perform the position long enough to learn how to do it and she did not have any training in the field to permit a different finding. (ECF #10 at PageID 1183). I decline to address this argument because even if she is correct, any error would be harmless given that, as discussed above, the ALJ found Ms. Green could perform her past relevant work as a medical records administrator. Thus, even if nursing instructor is not considered past relevant work, Ms. Green would still be found not disabled at Step 4.

CONCLUSION

Following review of the arguments presented, the record, and the applicable law, I **AFFIRM** the Commissioner's decision denying disability insurance benefits.

Dated: September 8, 2023

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE